# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

COREY SIDBERRY, )
                   )      Civil Action No. 11 - 888
           Petitioner, )
                   )      Magistrate Judge Lisa Pupo Lenihan
        v. )
                   )
JOHN FISHER, *Warden*, THE )
ATTORNEY GENERAL OF THE )
STATE OF PENNSYLVANIA and )
THE DISTRICT ATTORNEY OF )
THE COUNTY OF ALLEGHENY, )
                   )
           Respondents. )

## MEMORANDUM OPINION

Petitioner Corey Sidberry ("Petitioner") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("the Petition") challenging his judgment of sentence entered on January 23, 2008, in the Court of Common Pleas of Allegheny County, for Criminal Attempt (Homicide); Aggravated Assault; Criminal Conspiracy (Homicide and/or Aggravated Assault); and Violation of the Uniform Firearms Acts (VUFA): Person not to Possess Firearm and Carrying a Firearm Without a License. For the following reasons, the Petition will be denied and a Certificate of Appealability will also be denied.

## I.    Facts of the Crime

The facts of the crime, as set forth in the Trial Court Opinion dated July 28, 2008, are as follows:

> William Love, Jr. ("William") . . . testified to being shot in the back by the person
> he identified as [Corey]. William went to the C&M Bar in McKees Rocks with

1

his brother, Aaron Love, and another friend . . . .  At the bar, the men ran into
several acquaintances, including Lloyd Sidberry, who is Corey's brother, and
Omar Harris ("Omar"), who was a codefendant in the initial trial.  A fight broke
out at the bar between Aaron Love and Lloyd Sidberry.  William testified that
shortly after the fight broke up, Lloyd and Omar left the bar first, and the others
left shortly thereafter.  William, Aaron, and their friend began walking home on
Broadway Street.  William stated that after passing two dark cars, he heard
someone whose voice he recognized as [Corey's] say "Yo, hand me that burner."
Just before being shot in the back, William testified that he saw Omar in the
vehicle and that Omar handed Corey the gun.  William was shot in the back.
Aaron Love, who was present, refused to give a statement to the police.  He
testified that he could not see the face of the shooter, only the body.

Commonwealth v. Sidberry, 30 A.3d 552 (Pa. Super. Ct. 2011) (footnotes omitted).

Petitioner was tried along with his co-defendant, Omar Harris.  After a jury trial, he was
convicted as charged.  On January 23, 2008, the trial court sentenced Petitioner to a prison term
of 180 months to 360 months on the charge of Criminal Attempt (Homicide), and to no further
penalty on the remaining charges.  Petitioner filed post-sentence motions, which the trial court
denied on April 4, 2008.  He appealed, and the Pennsylvania Superior Court affirmed his
judgment of sentence on September 8, 2009.  Commonwealth v. Sidberry, 986 A.2d 1265 (Pa.
Super. Ct. 2009) (Table).

On October 30, 2009, Petitioner filed a *pro se* petition under Pennsylvania's Post
Conviction Relief Act ("PCRA").  The PCRA court appointed him counsel and approved
payment to a defense investigator.  On June 25, 2010, however, Petitioner's attorney filed a
motion to withdraw as counsel under Turner[1] and Finley[2] ("No Merit Letter").  Permission to
withdraw was granted, and Petitioner was given twenty days to respond to the court's intention
to dismiss his petition.  On July 30, 2010, the petition was dismissed.  An appeal followed, but

---

[1] Commonwealth v. Turner, 544 A.2d 927 (1988).

[2] Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988) (*en banc*).

the Pennsylvania Superior Court affirmed the denial of PCRA relief on May 27, 2011.

Commonwealth v. Sidberry, 30 A.3d 552 (Pa. Super. Ct. 2011) (Table).

Petitioner filed the instant Petition for Writ of Habeas Corpus with this Court on July 6, 2011. (ECF No. 1.) On December 22, 2011, Petitioner requested that the case be held in abeyance while he finished exhausting a claim of actual innocence in the state courts. (ECF No. 13.) That request was granted on January 5, 2012.

Petitioner filed a second PCRA petition with the trial court on December 20, 2011. On its face, the petition was untimely, having been filed more than one year after his judgment of sentence became final. 42 Pa.C.S. § 9545(b). Petitioner alleged, however, that his petition met the timeliness exception for newly-discovered facts that could not be ascertained with the exercise of due diligence, and that he asserted it within sixty days of acquiring the information. Specifically, he alleged that he had recently discovered that Ms. Dawnae Jones witnessed the shooting and that she would testify that the shooter was Petitioner's brother, Lloyd Sidberry, and that Petitioner was not present at the crime scene.

On December 29, 2011, the PCRA court issued notice of its intent to dismiss the petition without a hearing as time-barred. Petitioner filed objections to the notice, but the court dismissed the petition as untimely on January 27, 2012. Petitioner filed an appeal, and the Pennsylvania Superior Court held that the petition did in fact satisfy the newly-discovered facts exception to § 9545's one-year time bar. Additionally, the court held that an evidentiary hearing was necessary to allow the PCRA court to assess the credibility of Ms. Jones's testimony.

Commonwealth v. Sidberry, 60 A.3d 582 (Pa. Super. Ct. 2012) (Table).

Upon remand, the PCRA court appointed counsel. An evidentiary hearing was held on September 19, 2012, where Ms. Dawnae Jones was the sole witness. Following the hearing, the

parties submitted proposed findings of fact and conclusions of law. On March 14, 2013, the PCRA court issued its notice of intent to dismiss the petition and subsequently dismissed it on April 3, 2013. Petitioner timely appealed, but the Superior Court agreed with the PCRA court that Ms. Jones's testimony would not have altered the outcome of the trial. Commmonwealth v. Sidberry, 100 A.3d 293 (Pa. Super. Ct. 2013) (Table).

Petitioner's request for allowance of appeal was denied by the Pennsylvania Supreme Court on August 7, 2014. Commonwealth v. Sidberry, 165 WAL 2014 (Pa. Aug. 7, 2014). He moved to reopen this case on October 27, 2014. (ECF No. 15.)

## II.  Standard of Review

### A.  AEDPA and State-Court Deference

Under 28 U.S.C. § 2254, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable in a federal habeas action. *See*, *e.g.*, Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

In describing the role of federal habeas proceedings, the United States Supreme Court noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence…. The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Barefoot v. Estelle, 436 U.S. 880, 887 (1983).  In 1996, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  AEDPA "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations."  Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004); *see also* Lewis v. Horn, 581 F.3d 92, 109-18 (3d Cir. 2009).  AEDPA reflects the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

State court findings of fact have always been accorded considerable deference in federal habeas corpus cases filed by state inmates.  As the Court of Appeals for the Third Circuit has explained:

It is a well-established principle of federal law that state trial judges deserve substantial deference.

Face to face with the living witnesses, the original trier of the facts holds a position of advantage from which appellate judges are excluded.  In doubtful cases, the exercise of his power of observation often proves the most accurate method of ascertaining the truth . . . how can we say he is wrong?  We never saw the witnesses.

Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) (quoting United States v. Oregon Medical Society, 343 U.S. 326, 339 (1952), which was quoting Boyd v. Boyd, 169 N.E. 632 (N.Y. 1930)).  AEDPA continued that substantial deference.  Section 2254(e)(1), as amended by AEDPA, expressly provides that "a determination of a factual issue made by a State court *shall*

*be presumed to be correct.*  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1) (emphasis added).

AEDPA also requires that federal habeas corpus courts give substantial deference to the legal determinations of the state court when it has adjudicated a claim on the merits.  This standard of review is codified at 28 U.S.C. § 2254(d) and it provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Thus, AEDPA circumscribes a federal habeas court's review of a state prisoner's constitutional claim when the state court adjudicated that claim on the merits and denied it.  For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground.[3]  *See, e.g.*, Richter, 131 S. Ct. at 784-85; Robinson v. Beard, 762 F.3d 316, 324 (3d Cir. 2014).  "Section 2254(d) applies even where there has been a summary denial."  Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1402 (2011) (citing Richter, 131 S. Ct. at 786).

---

[3] Regardless of whether a state court had adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume that all state-court *factual findings* are correct unless the presumption is rebutted by clear and convincing evidence. *See* Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).

Finally, when a federal court is analyzing a claim under the standard set forth in §
2254(d), its review is limited to the record that was before the state court when it adjudicated the
claim. As the Supreme Court recently reiterated:

> Although state prisoners may sometimes submit new evidence in federal court,
> AEDPA's statutory scheme is designed to strongly discourage them from doing
> so. Provisions like §§ 2254(d)(1) and (e)(2) ensure that "[f]ederal courts sitting in
> habeas are not an alternative forum for trying facts and issues which a prisoner
> made insufficient effort to pursue in state proceedings." [Williams, 529 U.S. at
> 437; Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 787 (2011)] ("Section
> 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to
> confirm that state courts are the principal forum for asserting constitutional
> challenges to state convictions"); Wainwright v. Sykes, 433 U.S. 72, 90, 97 S. Ct.
> 2497, 53 L.Ed.2d 594 (1977) ("[T]he state trial on the merits [should be] the
> 'main event,' so to speak, rather than a 'tryout on the road' for what will later be
> the determinative federal habeas hearing").

Pinholster, 131 S. Ct. at 1401-03.

B. Exhaustion

A provision of the federal habeas corpus statute, 28 U.S.C. § 2254(b), requires a state
prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.
Specifically, a federal habeas court may not grant a state prisoner's petition for writ of habeas
corpus unless he has first presented his federal constitutional claims to the state courts. 28
U.S.C. § 2254(b)(1)(A). This is called the "exhaustion" requirement and it is "grounded in
principles of comity; in a federal system, the States should have the first opportunity to address
and correct alleged violations of state prisoner's federal rights." Coleman, 501 U.S. at 731. *See
also* O'Sullivan, 526 U.S. at 842-49. In order to exhaust a claim, "state prisoners must give the
state courts one full opportunity to resolve any constitutional issues by invoking one complete
round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45
(emphasis added). In Pennsylvania, this requirement means that a petitioner in a non-capital case

must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal. *See*, *e.g.*, Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

C. <u>Procedural Default</u>

A federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. A state's procedural rules are entitled to deference by federal courts, and a habeas petitioner may not have his claim reviewed if his violation of a state procedural rule constitutes an independent and adequate state law ground for denial of a federal habeas claim.[4] Sistrunk, 96 F.3d at 673. That is to say that the state court decision involving a question of federal law is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert*. *denied*, 516 U.S. 1151 (1996); Carter, 62 F.3d 595. However, in that case, the procedural default doctrine only applies when a state

---

[4] State procedural grounds for denying a PCRA claim include, but are not limited to, the PCRA's timeliness requirement, 42 Pa.C.S. § 9545(b), failing to adequately develop the claim in one's briefing, Commonwealth v. Bracey, 795 A.2d 935, 940 n. 4 (Pa.2001); Pa. R .A.P. 2116, 2119(a), and presenting a claim on appeal without having presented it to the lower court, Commonwealth v. Wharton, 811 A.2d 978, 990 (Pa.2002); Pa. R.A.P. 302(a).

procedural rule is consistently or regularly applied.  Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988)).[5]

A petitioner whose constitutional claims have not been addressed on the merits due to a procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court.  McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).  To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice."  Carrier, 477 U.S. at 494.  Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice."[6]  Coleman, 501 U.S. at 750.

---

[5] *See also* Doctor, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

[6] This exception is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).  The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant.  Sawyer v. Whitley, 505 U.S. 333, 340 (1992).  In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.

D.  Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).  The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonable competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.  Id. at 690.

The first prong of the Strickland test requires a defendant to establish that his or her attorney's representation "fell below an objective standard of reasonableness" by committing errors "so serious" that he or she "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.  A court must indulge in a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689.  The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the relevant time and place. Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him or her of a fair trial and the result was unreliable. Id. at 687.  To prove prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the

---

result of the proceeding would have been different." Id. at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693.

Representation is constitutionally ineffective only if it "so undermined the proper functioning of the adversarial process" that the defendant was denied a fair trial. Id. at 686. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." Harrington, 131 S. Ct. at 791. While in some instances "an isolated error" can support an ineffective-assistance claim if it is "sufficiently egregious and prejudicial," it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy. Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-90. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689; see also Bell v. Cone, 535 U.S. 685, 702 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and §2254(d) are both "highly deferential," id., at 689; Lindh v. Murphy, 521 U.S. 320, 333 n. 7 (1997), and when the two apply in tandem, review is "doubly" so,

> Knowles, 556 U.S. at 123, 129 S. Ct. at 1420. The <u>Strickland</u> standard is a
> general one, so the range of reasonable applications is substantial. 556 U.S., at
> 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of
> equating unreasonableness under <u>Strickland</u> with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied <u>Strickland</u>'s deferential standard.

Harrington, 131 S. Ct. at 788.

Courts may not indulge "*post hoc* rationalization" for counsel's decisionmaking that

contradicts the available evidence of counsel's actions. Wiggins v. Smith, 539 U.S. 510, 526-27

(2003). There is a "strong presumption" that counsel's attention to certain issues to the exclusion

of others reflects trial tactics rather than "sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8

(2003) (*per curiam*). "After an adverse verdict at trial even the most experienced counsel may

find it difficult to resist asking whether a different strategy might have been better, and, in the

course of that reflection, to magnify their own responsibility for an unfavorable outcome.

<u>Strickland</u>, however, calls for an inquiry into the objective reasonableness of counsel's

performance, not counsel's subjective state of mind." Harrington, 131 S. Ct. at 790 (citing

Strickland, 466 U.S. at 688).

## III.  <u>Discussion</u>

### A.  **Failure to prove all elements of the crimes.**

Petitioner first claims that the Commonwealth did not prove all elements of the firearm

and criminal attempt charges beyond a reasonable doubt. On direct appeal, Petitioner alleged

that the evidence was insufficient to support his firearms and criminal attempt convictions.[7] The

---

[7] Petitioner alleged that the Commonwealth failed to produce a firearm as part of its case or any evidence that tied either co-defendant to a firearm at the time of the offense. He also alleged that the Commonwealth failed to prove that he possessed a "homicidal motive."

Superior Court reviewed the elements of each of these crimes under their respective state statutes[8] and determined that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support Petitioner's convictions.  With regard to Petitioner's firearms convictions, the court noted that the evidence included testimony from the victim that, after leaving the bar, he walked past two dark-colored cars and heard a voice he recognized as Petitioner's say "Yo, hand me that burner,"[9] and then turned to see a gun being passed from the co-defendant, who was in the passenger seat, to Petitioner, who was standing up with the door open in the driver's side of the car.  The victim started walking quickly away and was then shot in the back.  The court determined that this evidence was sufficient to support Petitioner's firearms convictions.  Additionally, the evidence established that the victim was shot in the back mid-section of his body and that Petitioner's brother, Lloyd Sidberry, had been in a fight with the victim's brother, Aaron, at the bar prior to leaving.  The Superior Court found that this evidence constituted circumstantial evidence supporting a motive for Petitioner's actions.

The federal constitutional standard for evaluating an alleged violation based upon a sufficiency of the evidence claim is found in Jackson v. Virginia, 443 U.S. 307 (1979).  Under Jackson, on habeas review, the federal court is to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original).  A habeas petitioner is entitled to relief only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt." Id. at 324.  *See*

---

[8] 18 Pa.C.S.A. §§ 6105(a)(1), (c)(2) – Persons not to possess a firearm; 18 Pa.C.S.A. § 6106(a) – Firearms not to be carried without a license; and 18 Pa.C.S.A. §§ 901, 2501 – criminal attempt, criminal homicide.

[9] The victim testified that "burner" meant "gun".

Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997) (applying Jackson standard), *cert. denied*, 522 U.S. 1059 (1998).  Federal review of a sufficiency of the evidence claim under <u>Jackson</u> must be based on state law, that is, the substantive elements of the crime must be defined by applicable state law; although the minimum amount of evidence required by the Due Process Clause is purely a matter of federal law.  Jackson, 443 U.S. at 324 n.16; Coleman v. Johnson, 132 S.Ct. 2060, 2064 (2012).  The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review.  Id. at 319.

Here, the Superior Court applied Pennsylvania's standard for the sufficiency of the evidence, which the Third Circuit Court of Appeals has held is consistent with the <u>Jackson</u> standard.  *See* Evans v. Court of Common Pleas, Delaware Court, 959 F.2d 1227, 1232 n.6 (3d Cir. 1992) ("[T]he test for insufficiency of the evidence is the same under both Pennsylvania and federal law.").  Thus, the Superior Court did not apply a standard "contrary to" clearly established federal law and therefore Petitioner can only receive habeas relief by showing that the Superior Court's rejection of this claim was "objectively unreasonable."  Cavazos v. Smith, ___ U.S. ___, 132 S. Ct. 2, 4 (2011) (quoting Renico v. Lett, 559 U.S. 766, 768 (2010)).

As previously stated, the Superior Court detailed the testimony of the victim and concluded that the evidence sufficed to prove Petitioner guilty of the firearms charges.  The court also concluded that there was sufficient evidence to support the criminal attempt conviction based on Pennsylvania law that allows malice to be inferred from the use of a deadly weapon on a vital part of the victim's body.  A rational fact finder, viewing the evidence at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, could find all the elements of Petitioner's firearms and criminal attempt charges satisfied beyond a

14

reasonable doubt. Therefore, the Superior Court's decision to uphold the trial court's judgment of sentence cannot be said to have been an objectively unreasonable application of the <u>Jackson</u> sufficiency standard. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Ineffective assistance of counsel for failing to request a severance and for stipulating to prior conviction.

Next, Petitioner claims that his counsel compromised the presumption of his innocence by failing to move for severance of the felon in possession (Persons not to Possess a Firearm) count prior to trial and by agreeing to a stipulation at trial that permitted the jurors to learn that he had been convicted of narcotics trafficking. On appeal from the denial of PCRA relief, the Superior Court found that Petitioner was not entitled to relief because his arguments were undeveloped and because he failed to demonstrate a reasonable probability of acquittal but for the action or omission of trial counsel.

The issues of trial counsel's ineffectiveness that Petitioner raises were addressed by the state Superior Court utilizing the standard announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). The Third Circuit Court of Appeals has ruled that the <u>Pierce</u> standard is not "contrary to" <u>Strickland</u>. *See* Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, in order to mount a successful claim of ineffectiveness, Petitioner has to show that, under the "unreasonable application of" provision of section 2254(d), the state courts' application of <u>Strickland</u> to his claims "was objectively unreasonable, *i.e.*, the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under <u>Strickland</u>." Werts, 228 F.3d at 204.

First, it must be noted that Petitioner has failed to develop this particular claim in his habeas petition, and his conclusory allegations do not state a claim in a federal habeas action.

*See* Mayle v. Felix, 545 U.S. 644, 649 (2005) ("The habeas rule instructs the petitioner to 'specify all the grounds for relief available to [him]' and to 'state the facts supporting each ground.'") (quoting Rule 2(c) of the Rules Governing Habeas Corpus Cases). Nevertheless, the Court will consider the arguments Petitioner's appellate counsel made in support of this claim on direct appeal from Petitioner's judgment of sentence, which was the first time the claim was raised in state court. In the appellate brief, counsel for Petitioner argued the following:

> Two discrete acts of professional misfeasance by trial counsel in this case call the integrity of this verdict into grave doubt: (1) the failure to seek severance of the felon-in-possession charge, thereby allowing the jury to learn that [Petitioner] had previously been adjudicated a felon and to calculate that fact into its deliberations concerning charges other than the felon-in-possession count; and (2) the endorsement of a stipulation that compounded that first professional lapse by allowing the jury to further learn that the felony was Possession of Cocaine with Intent to Deliver.

> Had defense counsel moved prior to trial to sever the Felon-in-Possession count by demonstrating the prospective prejudice to be avoided by severing one count (with the assurance to the Court that [Petitioner] would elect a non-jury trial on that count), we are confident that the trial judge would have granted severance. In such a case, the prejudicial evidentiary impact of [Petitioner's] prior conviction would have been blunted then and there; the jury at the shooting trial would simply never have learned of [Petitioner's] conviction, having no allowance in the law to do so.

(ECF No. 10-1 at p.33.) Appellate counsel also argued that the law would have been on Petitioner's side "had trial counsel demanded redaction of the stipulation to reflect only the fact of the prior conviction while striking from it the nature of the offense." Id. at p.35. In support of this argument, appellate counsel cited Old Chief v. United States, 519 U.S. 172 (1997), where the United States Supreme Court held that a defendant charged under the federal statute prohibiting convicted felons from possessing a firearm (Title 18, United States Code, Section 922(g)(1)) enjoys the right to withhold from the jury the specific nature of the predicate conviction provided the defendant adheres to a stipulation stating the fact of a qualifying

conviction itself without elaboration. However, unlike federal law, the law in Pennsylvania would not have allowed evidence of Petitioner's narcotics trafficking conviction to be withheld from the jury.

Recently, in Commonwealth v. Jemison, 98 A.3d 1254 (Pa. 2014), the Pennsylvania Supreme Court addressed whether Pennsylvania should follow the holding in Old Chief and overrule Commonwealth v. Stanley, 446 A.2d 583 (Pa. 1982), its long-standing precedent which held that the Commonwealth may use any proper evidence to prove its case in the prosecution for possession of a firearm by a former convict and is not bound to accept a defendant's offer to stipulate that he had been convicted of predicate felony offenses.

In Jemison, the appellant was charged with persons not to possess a firearm, carrying a firearm without a license, resisting arrest, and two counts of receiving stolen property. He was tried by jury for persons not to possess a firearm, 18 Pa.C.S. § 6105(a)(1), after this charge had been severed from the others. To establish the appellant's guilt of this charge, the Commonwealth was required to prove that appellant had been previously convicted of a statutorily enumerated offense that barred him from possessing a firearm, and that he had, indeed, possessed a firearm. It was undisputed that, in 2008, the appellant had been convicted of robbery, one of the statutorily enumerated offenses, and the Commonwealth sought to introduce at trial the evidence of this robbery conviction. However, the appellant sought to stipulate only that he had been convicted of one of the enumerated offenses, without stating that the specific offense was robbery.

The trial court allowed the Commonwealth to introduce into evidence the appellant's certified conviction of robbery, and, immediately thereafter, instructed the jury "not to consider the defendant's prior conviction as evidence of his propensity to commit crime but only as proof

of the element of this specific offense." The trial judge repeated this instruction during her charge to the jury after both sides had rested. The appellant was found guilty of persons not to possess a firearm and appealed to the Superior Court, contending that the trial court had abused its discretion by admitting evidence of his prior conviction for robbery when he had been willing to stipulate to a statutorily enumerated conviction. The Superior Court affirmed the appellant's judgment of sentence, concluding that the trial court had properly applied Stanley the Pennsylvania Supreme Court's binding precedent. The sole issue before the Pennsylvania Supreme Court on appeal was

> [w]hether in a prosecution for possession of a firearm by a person not permitted to possess one, the prosecution should no longer be permitted to introduce the record of the disqualifying criminal conviction when the defendant is willing to stipulate that he is within the class of persons prohibited from possessing firearms.

Jemison, 71 A.3d 248 (2013). The parties were also directed to address whether Pennsylvania should follow the holding of Old Chief and overturn Stanley.

Ultimately, the Pennsylvania Supreme Court declined to overturn Stanley, distinguishing Old Chief on the basis of the text of the state and federal firearms statutes and noting that any possibility of unfair prejudice is mitigated by the use of proper cautionary instructions to the jury, directing them to consider the defendant's prior offense as evidence to establish the prior conviction element of the felon-in-possession charge, not as evidence of the defendant's bad character or propensity to commit crime.

To have been entitled to relief by the state court, Petitioner had to show both that his counsel provided deficient assistance and that there was prejudice as a result. *See* Strickland, *supra*. The Pennsylvania Superior Court found that he had failed to show either. In the context of a Strickland claim, the pivotal question under § 2254(d)'s unreasonableness standard is not

"whether defense counsel's performance fell below Strickland's standard" but "whether the state court's application of the Strickland standard was unreasonable." Harrington, 131 S.Ct. at 785. The answer to the former would be no different than the state court's adjudication of a Strickland claim on its merits. Id.

As a condition for obtaining habeas corpus relief, a petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 787-87. In other words, there must be "no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." Id. at 786. The Supreme Court has said that this standard is meant to be "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

In this case, the Pennsylvania Superior Court found that Petitioner had failed to show that counsel was ineffective by failing to move for severance of the felon-in-possession count prior to trial and by agreeing to a stipulation that permitted the jurors to learn that he had been convicted of narcotics trafficking. The state court specifically stated that he had failed to demonstrate prejudice in that a reasonable probability of acquittal existed but for the action or omission of trial counsel.

Petitioner maintains that revelation to the jury of his prior conviction for narcotics trafficking was improperly prejudicial and could have only fueled the jury's speculation that the barroom tussle and ensuing shooting were drug related, and more generally that he possessed a criminal propensity and poor character. Although the record is silent as to why counsel failed to

move to sever the felon-in-possession count from the other charges, Petitioner has not shown that, but for counsel's decision on this matter, and for stipulating to his prior conviction, there is a reasonable likelihood that the jury would have found him innocent of the crimes charged.[10]

Even assuming, for the sake of argument, that counsel's performance was deficient, the evidence that supports Petitioner's guilty verdict is, simply put, damning. The victim himself testified that he and Petitioner had been friends for eight years so he recognized Petitioner's voice as the person who said, "Yo, hand me that burner." When he turned to look he saw the co-defendant handing Petitioner a gun, and he had "no doubt" that Petitioner and the co-defendant were the men he had seen because on the night of the incident he had an unobstructed view on a well-lit street. In the hospital following the shooting, the victim immediately identified Petitioner as the man who had shot him but later told detectives that he was torn and unsure if he even wanted to press charges because of his relationship with Petitioner. In light of this evidence alone, it is not reasonably probable that the jury's verdict would have been any different even if defense counsel made a successful motion to sever the felon-in-possession charge.

Moreover, apart from the stipulation itself, and the trial judge's admonition reminding the jurors to weigh the evidence of Petitioner's criminal past solely for its stated finite probative

---

[10] One possible reason for trial counsel's failure to file a motion to sever could have been that Petitioner wanted to testify or was undecided about testifying on his own behalf going into trial. Even though he ultimately chose not to do so, it is not known when he arrived at this decision. Had he made the decision to testify, then his prior conviction would have been admissible as impeachment evidence to attack his credibility. If that would have been the case then there would have been no reason to file a motion to sever, and, it would have been a reasonable trial strategy for trial counsel to stipulate to the fact of prior conviction and put this fact before the jury as soon as possible rather than allow the Commonwealth to establish this fact through independent evidence on rebuttal. While one of Petitioner's arguments on direct appeal was that trial counsel could have demanded redaction of the stipulation to reflect the fact of the prior conviction while striking from it the nature of the offense, this is not the law in Pennsylvania. *See* Jemison, *supra.*

importance, there was no attention given to Petitioner's prior felony conviction whatsoever. Additionally, it is not likely that the jury impermissibly considered the nature of Petitioner's prior conviction because there was no evidence admitted at trial that the shooting incident itself was drug-related. It is assumed that the jury followed the judge's instructions and restricted its consideration of such conviction to its one stated purpose.

Based on the above, it cannot be said that the state court unreasonably applied the law governing ineffective assistance of counsel claims when it denied Petitioner relief on this claim. As such, Petitioner is not entitled to habeas relief.

### C. Ineffective assistance of counsel for failing to present alibi witnesses.

Next, Petitioner claims that his counsel was ineffective for failing to present alibi witnesses. In his PCRA proceedings, Petitioner argued that he presented an alibi to trial counsel and identified several witnesses who would testify in support of that alibi, but trial counsel failed to present these witnesses at trial.

Petitioner identified Tiheshia Turner, Mikisha Hudson, Keeona Sidberry and Cheline Harris as alibi witnesses, and he maintained that he could not have committed the crime because on the night of the shooting he was at the home of Keeona Sidberry until 9:30 p.m., and then arrived at Tiheshia Turner's house at about 9:50 or 10:00 p.m. and stayed there for the remainder of the evening.

As part of his PCRA proceedings, the state court approved the appointment of an investigator who subsequently obtained an audio tape statement from Lavina Harris and Tiheshia Turner, which corroborated Petitioner's alibi as set forth above. While Lavina Harris[11] stated

---

[11] In his No Merit letter, appointed PCRA counsel refers to this individual as "Lavina Turner" but this was probably an inadvertent combination of the names of Lavina Harris and Tiheshia

that Lloyd Sidberry, Damien Goggins, Keeona Sidberry, Cheline Harris, and Petitioner and his children were present at Keeona Sidberry's house, Damien Goggins was unavailable, Lloyd Sidberry did not want to be involved, and Keeona Sidberry and Cheline Harris preferred that Lavina Harris give the taped statement.

The PCRA court denied Petitioner relief, and the state appellate court rejected Petitioner's ineffectiveness claim on appeal because there was no evidence or statement regarding the location of Keeona Sidberry or Tiheshia Turner's homes and their proximity to the location where the shooting took place. It further found that the presentation of the alibi testimony, as identified by Petitioner, would not have likely changed the outcome of trial because it did not place him a substantial distance away from the crime, at the time of its commission, so as to render it impossible for him to be the shooter.[12]

Because trial counsel passed away prior to Petitioner's PCRA proceedings, the record is silent as to whether trial counsel actually knew of these alibi witnesses, and, if so, why he chose not to pursue an alibi defense. Despite this fact, the state court found that counsel had a reasonable basis for declining to present these witnesses at trial because Petitioner's alibi was weak.

Even if this Court were to assume that counsel was aware of the alibi witnesses and the anticipated substance of their testimony, there is no basis for this Court to disturb the state court's adjudication under AEDPA's deferential standard of review because Petitioner's alibi would not have proven that it was impossible for him to commit the crime. As noted above, to

Turner. It is not known to which one of these women counsel intended to refer, but this Court will assume that it was Lavina Harris.

[12] The Probable Cause Affidavit indicated that police officers were dispatched to the scene of the shooting at approximately 10:44 p.m.

prevail on a claim that the state court has adjudicated on the merits, Petitioner must demonstrate

that the state court decision that counsel was not ineffective "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." Harrington, 131 S. Ct. at 786-87. Petitioner has not made this

showing and therefore has not proven entitlement to habeas relief.

Additionally, this Court notes that in his second PCRA petition, which was filed after

Petitioner requested a stay of these habeas proceedings, Petitioner claimed after-discovered

evidence in the form of the testimony of Ms. Dawnae Jones that called into question his presence

at the scene of the crime and established his innocence. The claim was initially dismissed as

time-barred, but on appeal the matter was remanded for an evidentiary hearing. The PCRA court

appointed counsel and a hearing was held on September 19, 2012, where Ms. Jones was the sole

witness. The PCRA court ultimately dismissed the petition based on inconsistencies in Ms.

Jones's testimony and the fact that it would not have altered the outcome of the trial. On appeal,

the Superior Court explained its reasons for affirming the PCRA court's dismissal as follows:

> Herein, the PCRA court noted inconsistencies in Ms. Jones's testimony,
> implicitly finding her not credible. In addition, it determined that her testimony
> would not have altered the outcome of the case. According to the PCRA court,
> she claimed that [Petitioner] was not present, yet she could not identify any
> individuals in the crowd near the car just prior to the shooting. She admittedly did
> not witness the shooting of William Love. There were discrepancies in her
> testimony regarding the color of the gun. Finally, Ms. Jones "admitted to writing
> details at the behest of the private investigator."

> Our review of the record supports the PCRA court's determination. When
> Ms. Jones first encountered Lloyd Sidberry and Omar Harris on November 23,
> 2006, they were sitting in a parked car. She wished them a happy Thanksgiving
> and continued to walk for approximately one block. She heard a commotion
> behind her, turned around, and saw a crowd of people arguing. Ms. Jones could
> not remember how many people were there and she could not identify them. She
> testified that Lloyd Sidberry was sitting in the car with the door open, arguing
> with the crowd of people on the street. Only then did she see Lloyd Sidberry exit

the driver's door with a gun. She testified the gun was silver. She heard shots fired, but she did not see who fired them. She turned around and ran. She did not actually see Lloyd Sidberry shoot anybody "because I was behind him" when shots were fired. In response to the question whether she saw anyone get shot before she ran, she answered, "No." She just heard gunshots.

While Ms. Jones stated in her affidavit that [Petitioner] was not present, she admittedly could not identify the individuals in the crowd near the car at the time of the shooting. When asked how she could state for certain that [Petitioner] was not there, she responded that he was not in the car with Lloyd and Omar. Upon being confronted with the fact that [Petitioner] could have been in the crowd of people, she stated, "I didn't see him there." When asked whether she could state "for sure today that [Petitioner] was not in that crowd of people that you're saying was causing the commotion[,]" Ms. Jones responded in the negative. Despite that admission, however, she insisted that she said he was not present in her affidavit, "Because I know he wasn't there." When asked how she knew, she repeated, "Because I know he wasn't there."

Upon further cross-examination about a handwritten statement that Ms. Jones gave to a private investigator, Ms. Jones admitted that it contained details suggested by [Petitioner's] private investigator rather than from her own recollection. On cross-examination, she conceded that she wrote what the private investigator told her to write, and she did so even if she did not know it to be true.

. . . . [W]e agree with the Commonwealth that, if believed, Ms. Jones's testimony merely establishes that she recognized Lloyd Sidberry and Omar Harris in a vehicle. There were numerous other people on the sidewalk near that vehicle when the shooting occurred and she could not identify anyone. Thus, her testimony was not outcome determinative.

Furthermore, we find ample support in the record for the PCRA court's conclusion that her testimony would not have changed the outcome of this case. The victim positively identified [Petitioner], whom he had known for eight years, as his shooter. He overheard Omar Harris on his cell phone telling [Petitioner] that they had jumped his brother. Harris enlisted [Petitioner's] aid "to handle this." The bartender, Vanessa Llewellyn, testified that the other individuals involved in the argument, not the victim and his brother, left the bar first. She heard one of them say that he was returning with a gun. That individual did return about one-half hour later; he was dressed in different clothes, and she ordered him to leave. Jon Donnelly, a patron of the bar during the altercation, stayed to help Ms. Llewellyn clean up. He confirmed that one of the men involved in the altercation, not the victim or his brother, stuck his head in the door and looked around, but left immediately after Ms. Llewellyn told him he was not permitted to enter. Mr. Donnelly confirmed that the man was wearing different clothing and testified that there was a bulge in one of his pockets.

> Ms. Jones's testimony, at most, placed Lloyd Sidberry at the scene with a gun; it did not rule out that [Petitioner] was present and the shooter. Since Ms. Jones did not actually see the shooting and could not identify the shooter, we agree with the PCRA court that her testimony would not have altered the outcome of the trial.

(ECF No. 16-1 at pp.52-55) (citations to the record omitted).

Although the Supreme Court has not yet "resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence," McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013), to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" requires the petitioner to show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). This, the Supreme Court has said, requires more "than that needed to establish prejudice." Id.

The state court concluded that Ms. Jones's testimony would not have changed the outcome of the trial, and therefore Petitioner could not show that he was prejudiced by the absence of her testimony. Under § 2254(e)(1), this Court must presume that the factual determinations made by the state court are correct absent a showing of clear and convincing evidence. Petitioner, however, has not attacked the specific factual determinations that were made by the state court.

Given the inconsistencies in Ms. Jones's testimony at the evidentiary hearing, and the fact that she did not actually witness the shooting take place, it was not unreasonable for the state court to conclude that her testimony would not have altered the outcome of Petitioner's trial. *See* Lambert v. Blackwell, 387 F.3d 210 (3d Cir. 2004) (explaining that § 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or

unreasonable given the evidence).  *See also* Schlup, 513 U.S. at 324 (A colorable claim of actual innocence requires "new reliable evidence" such as "trustworthy eyewitness accounts".) Accordingly, this claim is denied.

**D.  Ineffective assistance of counsel for failing to seek suppression of identification.**

Petitioner argues that counsel was ineffective for failing to seek suppression of the victim's identification.  He contends that the victim failed to identify him as the shooter at the hospital and that the only means of identification was through a "suggestive encounter" with detectives.

First, this claim is procedurally defaulted for purposes of federal habeas review. Petitioner did not include this claim in his Pa. R.A.P. 1925(b) Statement of Matters Complaint of on Appeal, and, consequently, the Superior Court held that it was waived.  Waiver of a claim for failure to comply with the requirements of Pa. R.A.P. 1925(b) and identify all issues to be reviewed on appeal has been found to be an adequate and independent ground sufficient to invoke the procedural default doctrine.  *See* Edwards v. Wenerowicz, No. 11-3227, 2012 U.S. Dist. LEXIS 21908, 2012 WL 568849, at *4 (E.D. Pa. Jan. 31, 2012) ("The Third Circuit has specifically recognized that a failure to comply with Rule 1925(b) and identify all issues to be reviewed on appeal resulting in waiver at the state court level constitutes procedural default on independent and adequate state grounds.") (citing Buck v. Colleran, 115 F. App'x 526, 528 (3d Cir. 2004)), *report adopted by*, No. 11-3227, 2012 U.S.Dist. LEXIS 21908, 2012 WL 569015 (E.D. Pa. Feb. 22, 2012); *see also* Diggs v. Diguglielmo, No. 06-24, 2007 U.S. Dist. LEXIS 84852, 2007 WL 4116311, at *11 (E.D. Pa. Nov. 15, 2007) (waiver a claim for failure to raise it in Rule 1925(b) statement is an independent and adequate state law ground); Jones v. Lavan, No. 02-2359, 2002 U.S. Dist. LEXIS 23715, 2002 WL 31761423 at *2 (E.D. Pa. Dec. 9, 2002)

(same).  Petitioner can overcome this default only by a showing of cause and prejudice, or a "fundamental miscarriage of justice", and he has demonstrated neither.  *See* Coleman, 501 U.S. at 750.  As such, this claim is procedurally defaulted.

Nevertheless, even if this Court were to address the merits of this claim *de novo*, Petitioner has not demonstrated that counsel was in any way ineffective.  According to the detective who met with the victim at the hospital, the victim identified Petitioner as the shooter without hesitation or reluctance.  When shown the photo array, the victim was unable to lift his arms and point to Petitioner's photograph because of his medical state, but he verbally told the detective which picture depicted his shooter and affirmed when the detective pointed to the picture to which he was indicating.  Moreover, because of the prior relationship the victim had with Petitioner, the victim was able to identify Petitioner as the shooter even before he was shown the photo array.  Thus, Petitioner's contention that counsel was ineffective for failing to move to suppress the victim's identification because the victim failed to identify him as the shooter while at the hospital, or because the detectives somehow suggested to the victim that he was the shooter, is simply baseless.

### E.  Ineffective assistance of counsel for failing to request a Kloiber instruction.

Petitioner's final claim is that trial counsel was ineffective for failing to request a Kloiber[13] instruction.  Petitioner claims that a Koiber instruction was necessary because the victim failed to identify him in a previous photo array that included a picture of him.

---

[13] Commonwealth v. Kloiber, 106 A.2d 820, *cert. denied*, *sub nom.*, Koiber v. Commonwealth, 348 U.S. 875 (1954).

When the court issues a <u>Kloiber</u> instruction, it informs the jury that they should receive the witness' identification testimony with caution. Kloiber, 106 A.2d at 826. In Kloiber, the Pennsylvania Supreme Court explained that:

> [w]here the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution – indeed the cases say that "his [positive] testimony as to identify may be treated as the statement of a fact" . . .
>
> On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identify are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the [c]ourt should warn the jury that the testimony as to identify must be received with caution.

Kloiber, 106 A.2d at 826-27 (citations omitted). In Commonwealth v. Gibson, 688 A.2d 1152 (1997), the Pennsylvania Supreme Court held that a trial court was not required to instruct the jury to view with caution the unequivocal in-court identification of the appellant merely because the identifying witness did not pick appellant's photograph out of an array.

Because the victim consistently and unequivocally identified Petitioner as the shooter the state court found that there was no basis for a <u>Kloiber</u> instruction and therefore no arguable merit to Petitioner's claim that counsel was ineffective for failing to request a <u>Kloiber</u> instruction.[14] The record supports the fact that the victim identified Petitioner as his assailant on numerous

---

[14] Specifically, soon after arriving at the scene of the shooting, Detective William Palmer received information about a possible suspect. He returned to headquarters to create a photo array, which included Petitioner's picture. The detective's first contact with the victim was in the hospital at 1:30 a.m. Because the victim was in pain, the detective was only able to meet with him for five minutes. At that time, he presented the array to the victim. Detective Palmer testified that without hesitation or reluctance, the victim identified Petitioner as the man who had shot him.

occasions. While the victim was torn because of his relationship with Petitioner, and initially unsure of whether he wanted to press charges, the victim testified at trial that there was no doubt in his mind that Petitioner was the shooter. Even if there were evidence that the victim failed to identify Petitioner in a previous photo array, which there is not, the Superior Court concluded that the trial court was not required to instruct the jury to view with caution the unequivocal in-court identification of Petitioner merely because the victim did not pick Petitioner's photograph out of a previous array.

The state court did not unreasonably apply the law governing ineffective assistance of counsel claims in this case. Because there clearly was no basis for counsel to request a <u>Kloiber</u> instruction, counsel could not have been ineffective. Thus, Petitioner has not demonstrated entitlement to habeas relief.

## IV.     <u>Certificate of Appealability</u>

A certificate of appealability will be denied because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.") A separate Order will issue.

Dated: June 23, 2015.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Corey Sidberry
     HK-5626
     SCI Smithfield
     PO Box 999
     1120 Pike Street
     Huntingdon, PA  16652